## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. JENNIFER DUCKETT<br>AND SAMANTHA GALLO,<br><br>     Relators/Plaintiffs,<br><br>V.<br><br>HERITAGE VALLEY HEALTH SYSTEM, INC.,<br>NOLAN CHISMIRE,<br>LINDA HOMYK,<br>RONALD LECKEY,<br>MICHAEL BOYD,<br>NORMAN MITRY,<br>ERIN ADAIR PIETROPAOLO, and<br>JENNIFER RING,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.: 2:25-cv-527<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISQUALIFY RELATORS' ATTORNEY CHARLES KELLY AND LAW FIRM SAUL EWING, LLP

Relators' tortured attempts to deflect, dispute, and distinguish Attorney Kelly's conflicts only prove the point: Attorney Kelly ("Kelly") was far too enmeshed in HVHS's business—both as counsel and as a fiduciary—to represent Relators in this litigation. For years, Kelly provided legal advice to HVHS and received, reviewed, and voted on information that is substantially related to this lawsuit. As briefly addressed herein, Relators' response to Defendants' Motion to Disqualify Kelly and Saul Ewing, LLP is littered with misstatements of fact and law.

Relators dispute the third prong of the Third Circuit's disqualification test—whether the former client might have disclosed confidences relevant to the present action—yet they rely on a non-binding district court case that directly contradicts the Third Circuit's (and other circuits') authoritative holdings on that inquiry.[1] Even if Defendants *were* required to come forward with evidence that Kelly received information directly related to this lawsuit (they are not), they have met that burden. Kelly attests that "[a]t no time during [his] service on the full Board or while serving on the QM/MA or Risk Compliance committees" did he "ever obtain[] any information whatsoever regarding" eight different categories of litigation-related information. (Opp., Ex. 5 (Kelly Aff.) at ¶ 71). That is an objectively and demonstrably false statement.[2]

---

[1] *Compare* Opp. 16 (citing *Realco Servs., Inc. v. Holt,* 479 F. Supp. 867 (E.D. Pa. 1979)), *with Akerly v. Red Barn Sys., Inc.*, 551 F.2d 539, 544 n.12 (3d Cir. 1977) ("This Court has adopted the position that an attorney should be disqualified if he **may have** acquired material that is substantially related to his disputed representation in the course of a prior employment.") (emphasis added); *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973) ("[T]he court need not, indeed cannot, inquire whether the lawyer did, in fact, receive confidential information during his previous employment which might be used to the client's disadvantage. . . [W]here it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject matter of his subsequent representation it is the court's duty to order the attorney disqualified." (internal citation and quotation omitted)).

[2] As HVHS CEO Norman Mitry established in his declaration filed alongside Defendants' disqualification motion, Kelly's board service exposed him to numerous categories of litigation-relevant, confidential information. (Doc 44-1 ¶¶ 8-11). In further support of Mr. Mitry's statement, hundreds of pages of meeting minutes also refute Kelly on this point. *See infra* pp. 2-4 & n.3.

Kelly's tenure on the Board spanned well over fifty Board and committee meetings. Minutes for such meetings (which HVHS will make available to the Court for in camera review[3]) plainly show that Kelly repeatedly received and had access to information substantially related to this lawsuit. For example, QM/MA meeting minutes show that the committee routinely discussed sentinel events and confidential patient safety issues, and Kelly himself raised questions about HVHS's "Patient Safety Plans." Prior to a QM/MA meeting, Kelly asked about a patient death during a procedure, including "the FDA notification process" and whether HVHS maintains a "clearinghouse where all of this information [related to patient safety] is reported and maintained." For the same meeting, Kelly asked "how the physician is advised" of a medication monitoring error and opined "that the practice needs to be corrected." Kelly's statement that he received no "information whatsoever" on sentinel events and patient safety is easily refuted by the official record of these meetings.

Kelly also attests that he never received information on "drug diversion issues" or "HVHS pharmacy issues." Kelly Aff. ¶ 71. But at a June 24, 2022 board meeting, Kelly participated in a vote to approve a "capital request for replacement of the Pyxis automated drug dispensing cabinets for the pharmacy" and again voted on related financing at an April 20, 2023 meeting. The Pyxis system is referenced ***seven times*** in Relators' pleading in direct connection with the drug diversion allegations at the heart of this case. *See, e.g.*, Compl. ¶¶ 191, 203, 251. That is because the system's features include restricting and monitoring access to controlled substances as well as waste

---

[3] HVHS offers to make these minutes available for in camera review because they are replete with HIPAA-protected personal health information, personally identifiable information, credentialing information, attorney-client privileged information, and other confidential information. *See also Patentex, Inc.*, 478 F.2d at 571 (warning that a "response to an attorney's claim of non-access" should not compel the client to "describe in detail the confidential information previously disclosed and now sought to be preserved.").

compliance (a key topic in the Amended Complaint). At another meeting, the board discussed a medication error stemming from an inaccurate Omnicell (system prior to Pyxis) count and a system failure in the scanning process. Kelly's assertion that he never received "any information whatsoever" on these issues strains credulity when documents show that he *actually received* and acted on matters raised in the Amended Complaint.

Kelly also claims he never received information regarding "problems with nurses." Kelly Aff. ¶ 71. But December 20, 2021 QM/MA Committee minutes document confidential credentialing reviews of practitioners with substance abuse histories and impairment allegations, including DUI offenses, and enrollment in professional health testing and monitoring programs. Later, in June 2024, the QM/MA Committee discussed an Emergency Department nurse who received counseling and was placed on active performance monitoring. The board also discussed amendments to medical staff policies including "criminal background/clearance process," "medical staff professionalism," and "practitioner health and wellness." These confidential credentialing reviews, performance updates, and policy discussions are substantially related to the very information Kelly denies receiving.

These examples from meeting minutes (and there are many more) as well as the exhibits discussed in Defendants' opening brief demonstrate the breadth of confidential information Kelly received, which clearly goes to the issues raised in Relators' Amended Complaint (*see* Compl. ¶¶ 49-50, 93-110, 197-215). **And that fact should be dispositive given Relators' admission that (i) Kelly has a "*duty not to disclose confidential information received while a Board Member*," and (ii) this duty "*may materially limit Kelly's representation of Relators*." Opp. 20.**

Given the overwhelming evidence of Kelly's involvement as HVHS counsel and fiduciary, Relators seek out strawman arguments. They claim Kelly did not form an attorney-client

relationship with Defendants because he never entered into a written engagement or fee agreement. Opp. 10. However, Defendants never argued otherwise, and neither is required to establish an attorney-client relationship under controlling law. *See* HVHS Br. at 11. Relators argue Kelly could not have been Heritage Valley Health System, Inc.'s ("HVHS") attorney because HVHS retained other outside counsel. Opp. 14. But they cite no case showing this is relevant to the implied attorney-client relationship test (*see* Opp. 14-15)—because it is not. *See Cap. Care Corp. v. Hunt*, 847 A.2d 75, 83 (Pa. Super. 2004) (attorney-client relationship existed despite retention of different counsel for same matter). The test asks whether a party sought legal advice within the attorney's expertise and whether the attorney provided it. *See* HVHS Br. at 11. That manifestly happened here. *Id.* at 11-18. Indeed, documents show HVHS placed Kelly—**whom HVHS and board members contemporaneously referred to as "*their attorney*"**—on equal footing with outside counsel for critical legal issues before the board. *Id.* at 18-19.

Relators also argue that the individual defendants (**all *HVHS employees***) do not have standing but cite only a Philadelphia Common Pleas Court case. In this district, and across the Third Circuit, courts have found non-clients have standing. *See, e.g.*, *Bosh v. Renco Grp., Inc.*, No. 16-190, 2016 WL 3633079, at *5 (W.D. Pa. July 7, 2016) (rejecting standing argument because "a court has the power to disqualify an attorney based on its inherent authority to supervise the professional conduct of attorneys appearing before it"); *see also In re Pressman-Gutman Co.*, Inc., 459 F.3d 383, 402 n.20 (3d Cir. 2006) (reviewing relevant authority and assuming without deciding that non-client defendants have standing to raise disqualification).

Finally, Relators argue that policy reasons weigh against disqualification because it would (i) prevent attorneys like Kelly from blowing the whistle on clients, (ii) deprive Relators of counsel

- 4 -

of their choice, and (iii) chill attorney board participation. Opp. 24-25. None of these arguments spare Kelly and Saul Ewing from disqualification.

Courts have easily rejected the first argument. In *United States v. Quest Diagnostics Inc.*, 734 F.3d 154 (2d Cir. 2013), a former general counsel formed a partnership to bring a *qui tam* action against his former employer, alleging a fraudulent billing scheme. *Id.* at 159. The district court dismissed the complaint as to **all defendants** and disqualified the relators and their counsel, finding it "necessary to protect Defendants from the use of their confidential information against them." *Id.* at 162-63. The Second Circuit affirmed, holding that "it was unnecessary for [the former general counsel] to participate in this *qui tam* action at all, much less to broadly disclose [the client's] confidential information," and that permitting the relators to proceed "would taint the trial proceedings and prejudice defendants." *Id.* at 165, 167. Other courts agree.[4]

Relators' second and third policy arguments fare no better. "[W]hen an attorney has a serious potential conflict of interest, the presumption in favor of counsel of choice is rebutted and the right must give way." *United States v. Lacerda*, 958 F.3d 196, 212 (3d Cir. 2020). And while board participation alone is not problematic, attorneys have "a duty to avoid conflicts of interest." *Com. v. Tedford*, 960 A.2d 1, 54 (Pa. 2008). Litigating against an entity one served as both attorney and board member is a brazen violation of that duty, which only disqualification can cure.

For these reasons, and for the reasons stated in their opening brief, Defendants respectfully urge this Court to disqualify Attorney Kelly and his firm, Saul Ewing, LLP, and grant any other appropriate relief.

---

[4] *See U.S. ex rel. Holmes v. Northrop Grumman Corp.*, 642 Fed. App'x 373 (5th Cir. 2016); *Hall v. A. Corp.*, 453 F.2d 1375, 1376 (2d Cir. 1972) (per curiam); *Wise v. Consol. Edison Co. of New York*, 282 A.D.2d 335, 335 (N.Y. 2001).

Dated: August 7, 2026

Respectfully submitted,

REED SMITH LLP

By: */s/ Christopher R. Brennan*
    Christopher R. Brennan (PA ID # 313534)
    Reed Smith Centre
    225 Fifth Avenue
    Pittsburgh, PA 15222
    Phone: (412) 288-3131
    Fax: (412) 288-3063
    cbrennan@reedsmith.com

    Adria Perez (admitted *pro hac vice*)
    Reed Smith LLP
    1020 Spring Street NW, Suite 1100
    Atlanta, GA 30309
    Phone: (470) 947-5872
    aperez@reedsmith.com

*Counsel for Defendants Heritage Valley Health System, Inc., Linda Homyk, Ronald Leckey, Michael Boyd, Norman Mitry, Erin Adair Pietropaolo, and Jennifer Ring*

THE GRAIL LAW FIRM

*/s/ Efrem M. Grail, Esq.*
Efrem M. Grail, Esq.
PA I.D. No. 81570
*egrail@graillaw.com*
*412/414-4586*

Rachel T. Sleiman, Esq.
Pa. I.D. No. 335515
*rsleiman@graillaw.com*
*412/815-4021*

Julia M. Gitelman, Esq.
PA ID No. 327449
*jgitelman@graillaw.com*

THE GRAIL LAW FIRM
428 Blvd. of the Allies, Suite 500
Pittsburgh, PA 15219
(412) 332-9101

*Counsel for Defendant Nolan Chismire*

- 6 -

- 7 -

## CERTIFICATE OF SERVICE

The undersigned certifies that, on August 7, 2026, the foregoing document was filed electronically with the Court.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system, and the parties may access this filing through the Court's system.

_/s/ Christopher R. Brennan_
Christopher R. Brennan